## STATE OF FLORIDA v. HARRIS
### Case No. 83-4200
Seventeenth Judicial Circuit, Broward County

September 19, 1983

### APPEARANCES OF COUNSEL

**Joel Lazarus,** State Attorney's Office, for plaintiff.
**Ed Salantrie,** Public Defender's Office, for defendant.

### OPINION OF THE COURT

J. LEONARD FLEET, Circuit Judge.

On April 13, 1983, Larry Harris, a/k/a "Ricky", was arrested for having committed a multitude of serious felonies wherein Hattie Stewart was the victim, all events allegedly occurring on March 15, 1983. By Information filed with this Court on April 22, 1983, Defendant was formally charged with two counts of sexual battery and one count of attempted first-degree murder upon Mrs. Stewart.

At his arraignment upon said charges on April 26, 1983, the accused stood mute, whereupon a plea of not guilty was entered pursuant to F.R.Cr.P. 3.170(c). In September, 1983, Defendant changed his plea and entered pleas of guilty to Count I (Sexual Battery) and Count III (Attempted First Degree Murder); the plea was entered with no

conditions other than the commitment by the State to dismiss Count II (Sexual Battery) at the time of sentencing. With full knowledge, and express agreement, of the accused, and his attorney, the Court received all police reports, medical reports, transcripts of depositions of all witnesses, Defendant's criminal record and, in fact, the entire file of the prosecutor, to review prior to the scheduled sentencing date of September 7, 1983. From all of the foregoing materials, and from testimony received by the Court on September 7, 1983,—in the presence of the accused—the Court reached its conclusion to retain jurisdiction over the Defendant herein.

Defendant was born on January 22, 1957. The full arrest record of Defendant prior to adulthood is unknown to the Court, however, it is known that on March 4, 1974, and June 26, 1974, he was twice arrested for rape. In the March 4, 1974, rape accusation it was alleged that the Defendant utilized a knife and a razor blade. In the June 26, 1974, rape accusation it was alleged that Defendant utilized a firearm. On May 30, 1975, Defendant was once again accused of rape, this time without utilizing a weapon other than brute strength. For reasons not clear to this Court, none of the aforesaid rape charges were prosecuted against Mr. Harris, a lack of action which, ultimately, may have been a significant reason why Mrs. Stewart was victimized in the case now before the Court.

Defendant's luck ran out when he was arrested on October 6, 1977, upon charges of aggravated assault and attempted robbery; for these antisocial acts Mr. Harris was sent to prison for five years, said sentence having been imposed on May 2, 1978. Somehow, at a date not shown in the record, Mr. Harris was released on parole from the Department of Corrections, a privilege he failed to respect as evidenced by his arrest on March 20, 1981, for being a felon in the possession of a firearm and, on September 27, 1981, his arrest for burglary. The latter charge was later reduced to trespass of a structure, for which he was sentenced to time served in the local jail. Pursuant, apparently, to the parole violation predicated upon the above mentioned March 20, 1981, arrest, Mr. Harris was recommitted to the Department of Corrections from which he was again paroled on May 5, 1982. Not yet convinced that he had to conform to the law, Mr. Harris, on June 13, 1982, committed an aggravated assault by pointing a firearm at a female, thus causing a warrant for retaking to be issued by the Parole Commission on June 1, 1982. Why Mr. Harris was still at liberty on March 15, 1983, is a puzzlement to this Court and a sad commentary upon the efficiency of our criminal justice system in Florida. Because he was not in custody, Mrs. Stewart was the victim of a brutal beating

116

and a sexual battery, the latter experience being one which, in the opinion of this Court, is one of the most debilitating and traumatic experiences one can suffer! At approximately 1:45 p.m. on March 15, 1983, Hattie Stewart, 47 years of age, handicapped by arthritis and a "back condition" to the extent that she had been unable to work for three years, was in her bedroom in her home in Pompano Beach watching television. The Defendant, whom Mrs. Stewart had known since his childhood, came inside her house and requested a drink of water. Because Mrs. Stewart had cared for, and provided a home for, him after his mother had died, the accused referred to her as "Mom".

After obtaining the water, Defendant joined Mrs. Stewart in her bedroom, sitting on the bed where she was laying, and watched television for a short period of time. Upon finishing his water, Defendant took his cup back into the kitchen and returned to Mrs. Stewart's bedroom, this time returning with a butcher knife held behind his back. Just as Mrs. Stewart saw the poorly concealed knife in his hand, Defendant sprang upon her as she lay on her bed, held the knife to her throat and said "I want to get some of your pussy today!" There then ensued the violent struggle hereafter described!!

Mrs. Stewart resisted, with great force, the Defendant's battery and forced sexual indignities. During the course of this struggle Mrs. Stewart was repeatedly slashed and stabbed with a knife, beat upon her head and body with an ashstand, strangled and otherwise struck by Defendant, suffering numerous physical injuries of varying severity.

When Mrs. Stewart refused to obey Defendant's order that she assist him in penetrating her vagina with his penis, Defendant threatened to cut off her hand, which was already bleeding from multiple lacerations. In spite of her resistance and refusal to cooperate, Defendant managed to penetrate her vagina with his penis while they fought on the floor of Mrs. Stewart's living room. Somehow she broke free and attempted to escape through her front door only to be frustrated by a balky lock; at this point Defendant clubbed her with an ashstand, and the struggle continued. After dragging her from the front door, Defendant forcefully performed cunnilingus upon Mrs. Stewart and, once again, penetrated her vagina with his penis, this time ejaculating seminal fluid into her. At some point during, or just after, the third sexual assault, Mrs. Stewart gained possession of the butcher knife and attempted to stab Defendant, who then clubbed her head with a glass flower vase until she relinquished the weapon. Defendant then stabbed Mrs. Stewart in her shoulder, saying that she then wouldn't be able to be a witness against him. His second attempt to stab Mrs. Stewart was thwarted when the knife struck a chair, causing the blade to break.

Defendant's violent nature, however, was not to be deterred and he again began clubbing Mrs. Stewart with the ashstand, causing her to bleed profusely. Only when Mrs. Stewart feigned death did the accused cease his vicious attack upon her. Apparently not convinced that she was dead, Defendant threatened Mrs. Stewart further when he said he'd kill her if he went to prison as a result of her testifying against him. Finally, Defendant departed.

Finding inner resources of strength, Mrs. Stewart dragged herself outside her home, which act resulted in medical assistance being summoned. Upon arrival at Community Hospital where she remained for an extended period of time, Mrs. Stewart received treatment for multiple trauma to her mind and body. In fact, as of 7:00 p.m. on the date of the attack, an examining physician was moved to comment:

> "When I interviewed the patient she had been sedated, was moaning with the discomfort of multiple trauma."

Although F.S. 947.16(3) grants a sentencing judge the authority to retain jurisdiction over an offender for review of a parole commission release order, such retention to be for up to one-half of the sentence imposed, there are no statutory guidelines for the trial judge to follow. The problem was reviewed in *Moore v. State*, 392 So.2d 277 (Fla. 5th DCA, 1981) and approval was given for the sentencing judge to take into consideration the subject offense for which the defendant was then being sentenced, past convictions and the "reputation" of the accused. *Moore v. State*, supra, at 278. As Judge Cowart wrote in his specially concurring opinion, Moore v. State, supra, at 279:

> ". . . The initial decision to retain jurisdiction is not conditional upon any evidence or finding of fact and is not subject to any statutory guidelines or criteria. It is purely an exercise of general judgment in contemplation of the possible desirability of later judicial action . . ."

> . . . . . . . . . . .

> ". . . The statute only requires the sentencing judge to state and record the matters that in the particular case satisfied his conscience and caused him to form the decision in favor of retaining jurisdiction."

The Fourth District Court of Appeal, in *Harden v. State*, 428 So.2d 316 (1983) expressly committed itself to the proposition that a reputation for aggressive and injurious behavior is sufficient justification for retention of jurisdiction.

The sum of the information about Mr. Harris which was made

**118**

available to this Court reveals a picture of the total person. Most of the Defendant's aggressive behavior, historically, seems to be directed towards women, a characteristic not uncommon in one who is inclined toward rape. After all, it is accepted dogma that rape is an acting out of hatred for women rather than a violent satisfaction of lust. The debasement of the victim appears to be the driving force of the rapist, not the need for satisfaction of the fundamental instinctual desire for sexual relief. Understanding motivation for antisocial behavior does not equate with forgiveness; rather, as is true in this case, "understanding" herein requires enhancement of penalty.

Mr. Harris presents a physical appearance that is at once both pleasing and threatening. He has engaged, successfully, in physical exercise designed to develop his muscles to near maximum capacity. Were it not for Defendant's propensity towards violence, such efforts would be praiseworthy. Further, on every reported occasion that he came in contact with law enforcement authorities, Mr. Harris was armed. The facts of the instant case leave no doubt in the mind of the Court that with no, or little, provocation, Mr. Harris will utilize his strength and/or force of arms to impose his will upon others. It is this propensity toward violence, as graphically demonstrated in the instant case, that has caused this Court to retain jurisdiction of the sentence of incarceration as imposed on Count I, Sexual Battery. Mr. Harris is, at the present time, a very real danger to society; this Court will not be a party to his premature release from confinement.

For the reasons set forth above it is hereby

ORDERED that:

1. This Court hereby retains jurisdiction of this cause for 37½ (thirty-seven and one-half) years pursuant to F.S. 947.16(3).

2. The retention of authority as to Count III, Attempted Murder, as announced in open court on September 7, 1983, is hereby rescinded pursuant to *Williams v. State*, 374 So.2d 1086 (Fla 2 DCA 1979); *Johnson v. State*, 391 So.2d 781 (Fla. 4th DCA, 1980).